Filed 5/10/23

**CERTIFIED FOR PARTIAL PUBLICATION\***

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| VANESSA YOUNG,<br>     Plaintiff and Appellant,<br>v.<br>REMX SPECIALTY STAFFING et al.,<br>     Defendants and Respondents. | A165081<br><br>(San Francisco County<br>Super. Ct. No. CGC-14-538409) |

Plaintiff Vanessa Young (Plaintiff) appeals from the trial court's order granting summary judgment to the defendant (Employer) on her claim under the Private Attorneys General Act of 2004 (Lab. Code, § 2699 et seq.; PAGA).[1] We affirm.

BACKGROUND

Employer is a temporary staffing company. Plaintiff was hired by Employer as a temporary worker in July 2013.

---

\* Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of part I.

[1] All undesignated section references are to the Labor Code.

1

On August 5, 2013, Employer assigned Plaintiff to a temporary position at Bank of the West (BOW or Bank).  On Friday, August 16, Plaintiff had a telephone conversation with an Employer representative about delivery of Plaintiff's paycheck.  The Employer representative claimed Plaintiff was verbally abusive on the phone.  Plaintiff testified the Employer representative "basically" told Plaintiff she was "fired" and it was "implied" the firing was from Employer, rather than the Bank assignment.  In a contemporaneous internal email, the Employer representative characterized her message to Plaintiff as being that she was "not to return back to Bank of the West due to her violent and threatening behavior as a pre[]cautionary measure and safeguard for Bank of the West."

Plaintiff reported for work at the Bank on the following Monday, August 19.  A different Employer representative escorted her out of the Bank.  Plaintiff testified this Employer representative "basically implied" that Plaintiff was "fired" from employment with Employer.  In an email sent later the same day, an Employer representative told Plaintiff, "As discussed today over the phone, your project has ended effective today, Monday, August 19th at BOW.  You can not return back to the work site unless instructed to do so."

Plaintiff was paid on Friday, August 23, 2013 for work performed the week of August 12; and was paid Friday, August 30 for work performed on Monday, August 19.  These pay dates were in accordance with Employer's regular payroll schedule.  Plaintiff did not have any other work assignments with Employer.

Plaintiff sued Employer in April 2014.  In July 2021—after the trial court ordered arbitration of Plaintiff's individual claims and dismissed her class claims, and this court dismissed Plaintiff's appeal from that order (*Young v. RemX, Inc.* (2016) 2 Cal.App.5th 630)—Plaintiff's only remaining

claim was for PAGA penalties based on Employer's alleged failure to timely pay final wages to a discharged employee in violation of section 201.3, subdivision (b)(4) (section 201.3(b)(4)). This statute provides, "If an employee of a temporary services employer is assigned to work for a client and is discharged by the temporary services employer or leasing employer, wages are due and payable" immediately.[2] Employer moved for summary judgment, arguing Plaintiff was not discharged from employment with Employer, but only from her assignment at the Bank, and therefore section 201.3(b)(4) had not been violated. The trial court agreed and granted summary judgment for Employer.

## DISCUSSION

"A defendant is entitled to summary judgment if it can 'show that there is no triable issue as to any material fact.' (Code Civ. Proc., § 437c, subd. (c).) The defendant bears the initial burden of establishing that the plaintiff's cause of action has 'no merit' by showing that the plaintiff cannot prove 'one or more elements of [the] cause of action.' (*Id*., subds. (o) & (p)(2).) If this burden is met, the 'burden shifts' to the plaintiff 'to show that a triable issue of one or more material facts exists as to the cause of action.' (*Id*., subd. (p)(2); [citation].) We independently decide whether summary judgment is appropriate." (*Martinez v. City of Beverly Hills* (2021) 71 Cal.App.5th 508, 517.)

---

[2] Although "leasing employer" is not defined in the Labor Code, the Unemployment Insurance Code defines it interchangeably with "temporary services employer." (Unemp. Ins. Code, § 606.5, subd. (b) ["As used in this section, a 'temporary services employer' and a 'leasing employer' is an employing unit that contracts with clients or customers to supply workers to perform services for the client or customer and performs all of the following functions . . . ."].)

3

I.      *Discharge From Employer*

Plaintiff argues there was a dispute of fact as to whether she was discharged from Employer.  We disagree.

As a threshold matter, Plaintiff argues reversal is warranted because of the separate statement of undisputed facts.  First, Plaintiff argues Employer did not list as an undisputed fact that Plaintiff was not discharged, but instead quoted Plaintiff's deposition testimony in several of its undisputed facts.  Regardless of whether Employer's separate statement was improper, the authority Plaintiff relies on provides only that "trial courts have the inherent power to strike proposed 'undisputed facts' that fail to comply with the statutory requirements," not that they are required to or that it is an abuse of discretion if they do not.  (*Reeves v. Safeway Stores, Inc.* (2004) 121 Cal.App.4th 95, 106.)  The trial court here did not strike the challenged facts and Plaintiff provides no reason the ruling should be reversed.  Second, Plaintiff points to her additional material fact that "[Employer] fired [Plaintiff]," and argues Employer's response—"[Plaintiff's] testimony that [two Employer representatives] both 'basically told me I was fired' is not disputed for purposes of this motion"—constitutes an admission to the fact for purposes of the summary judgment motion.  While we agree Employer's response is a concession that Employer fired Plaintiff, it is not a concession that the firing was from employment with *Employer*, rather than from the Bank assignment.

We now turn to the evidence on the issue.  Employer presented evidence that its employee handbook, which Plaintiff received, provides, "We . . . can expressly notify you of the decision to terminate your employment, either with or without cause;" and "[W]e both agree that the employment relationship will not end at the conclusion of any assignment, unless one of us

4

expressly notifies the other of the decision to end the employment relationship in the manner noted above. It is agreed that, in the absence of such notice, the end of an assignment will not constitute or be considered a discharge, release, resignation, or termination of the employment relationship."

As noted in the background facts, Plaintiff testified Employer representatives "basically told me I was fired" and that it was "implied" that she was being fired from Employer, rather than from the Bank assignment. Needless to say, an implied statement does not constitute the express notice required by the employee handbook. In contrast, the email Employer sent to Plaintiff only referenced her assignment at the Bank: "As discussed today over the phone, your project has ended effective today, Monday, August 19th at BOW. You can not return back to the work site unless instructed to do so."

Moreover, Employer submitted evidence that contemporaneous notes by Employer representatives about communications with or about Plaintiff consistently referenced her removal from the Bank assignment, and did not mention termination from Employer: the Employer representative who spoke to Plaintiff on the phone on Friday, August 16, characterized her message as being that Plaintiff was "not to return back to Bank of the West due to her violent and threatening behavior as a pre[]cautionary measure and safeguard for Bank of the West;" an August 19 internal discussion among Employer representatives resulted in an agreement that Plaintiff's "assignment needs to be terminated due to her behavior and as a pre[]cautionary measure for Bank of the West;" the Employer representative who escorted Plaintiff from the Bank site was sent there to "reiterate that [Plaintiff's] assignment was ended;" and a manager who spoke to Plaintiff later that day "repeated several times her project has ended effective today." Plaintiff's reliance on notes that

5

an Employer representative "left [Plaintiff] a voice message to not return to work," with no clarification whether the "work" was the Bank assignment or any work with Employer, is not sufficient to create a material issue of fact.

Employer also presented evidence that Plaintiff remained eligible to take new assignments with Employer. Employer presented evidence a "DNR" code checked in Plaintiff's employee record meant "Do Not Return" regarding her Bank assignment, and if she had been terminated from Employer the records would have indicated the code "DNU," meaning "Do Not Use." Employer further presented evidence that Plaintiff was listed as "Available" within Employer's database of temporary employees and, had she been terminated from Employer, she would have instead been listed as "Inactive." Employer submitted evidence that the code "WF – Actions/Behavio [sic]" listed under "End Reason" in Plaintiff's records referred to Wells Fargo, one of Employer's largest clients, in what was an apparent error regarding the Bank's name.

Plaintiff argues Employer's declarants' explanations of the various codes found in its database entries for her are self-serving and not credible, but Plaintiff provides no actual evidence disputing Employer's evidence as to the meaning of these codes. "[M]erely offering reasons why a witness might have an incentive to lie, without offering any evidence to suggest [the witness] actually was lying, is not enough to create a disputed issue of material fact. . . . [¶] Rather, the law is clear that summary judgment may not be denied solely on the basis of the credibility of the moving party's witnesses."[3] (*Ayon v. Esquire Deposition Solutions, LLC* (2018) 27 Cal.App.5th 487, 496.)

---

[3] Plaintiff complains Employer refused to produce documents relating to the codes in discovery, but does not claim she filed a motion to compel or requested a continuance to seek further discovery. She provides no authority

6

Plaintiff also relies on a January 2021 email from Employer asking Plaintiff to "complete the Onboarding and I-9 documents. This allows us to hire and pay you." Employer submitted a declaration stating, "If an employee inquires about a new staffing assignment and if the employee has not staffed an assignment for six months, it is [Employer's] practice to ask the employee to update their employment documents;" and "if a discharged employee who has been coded as 'Do Not Use' inquires about re-employment, . . . they are to be told, 'Based on your previous work experience we would not be able to move forward with employment.' "[4] The email does not create a dispute of fact as to whether Employer discharged Plaintiff from all work with Employer.

In sum, Plaintiff failed to establish a disputed issue of fact as to Employer's discharge of her.

II.    *Discharge from Bank Assignment*

In the alternative, Plaintiff argues that, even if there is no material dispute of fact that she was not discharged from Employer, her discharge from her temporary assignment with the Bank constitutes a "discharge" for purposes of section 201.3(b)(4), and she was therefore entitled to immediate payment of wages due. We disagree.

" 'As in any case involving statutory interpretation, our fundamental task here is to determine the Legislature's intent so as to effectuate the law's purpose.' [Citation.] The well-established rules for performing this task require us to begin by examining the statutory language, giving it a plain and

---

that any failure to produce records in discovery impacts our review of the summary judgment motion.

[4] The evidence does not indicate why the January 2021 email was sent to Plaintiff.

commonsense meaning. [Citation.] We do not, however, consider the statutory language in isolation; rather, we look to the statute's entire substance in order to determine its scope and purposes. [Citation.] That is, we construe the words in question in context, keeping in mind the statute's nature and obvious purposes. [Citation.] We must harmonize the statute's various parts by considering it in the context of the statutory framework as a whole. [Citation.] If the statutory language is unambiguous, then its plain meaning controls. If, however, the language supports more than one reasonable construction, then we may look to extrinsic aids, including the ostensible objects to be achieved and the legislative history." (*Los Angeles County Metropolitan Transportation Authority v. Alameda Produce Market, LLC* (2011) 52 Cal.4th 1100, 1106–1107.)

Plaintiff argues that considering section 201.3(b)(4) in conjunction with the subdivision immediately following demonstrates the "discharge" in section 201.3(b)(4) can be either from the temporary services employer or from the temporary assignment. Section 201.3(b)(4) provides, "If an employee of a temporary services employer is assigned to work for a client and is discharged by the temporary services employer or leasing employer, wages are due and payable" immediately. Section 201.3, subdivision (b)(5) provides, "If an employee of a temporary services employer is assigned to work for a client and quits his or her employment *with the temporary services employer*, wages are due and payable" within 72 hours. (Italics added.) Plaintiff relies on the canon of statutory construction that " ' "[W]hen the Legislature has carefully employed a term in one place and has excluded it in another, it should not be implied where excluded." ' " (*Wasatch Property Management v. Degrate* (2005) 35 Cal.4th 1111, 1118.) Plaintiff notes the Legislature expressly limited its protection to an employee who quits if they

8

quit their position "with the temporary services employer." Plaintiff argues that the Legislature's failure to include that same limiting language to an employee who is discharged indicates we should not find the limitation implied in section 201.3(b)(4).

The flaw in Plaintiff's argument is that a "discharge" requires the end of an *employment relationship*. In *Smith v. Superior Court (L'Oreal)* (2006) 39 Cal.4th 77 (*L'Oreal*), the Supreme Court considered the meaning of "discharge" as used in sections 201 and 203.[5] The court noted that "neither statute provides a definition for that term. Nor is the term elsewhere defined in the Labor Code or in the regulations promulgated by the Department of Industrial Relations, Division of Labor Standards Enforcement (DLSE), the agency charged with interpreting and enforcing state wage and hour laws." (*L'Oreal,* at p. 84.) The court reasoned that a "commonly understood meaning of 'discharge' includes the action of an employer who, having hired an employee to work on a particular job or for a specific term of service, formally releases the employee and *ends the employment relationship* at the point the job or service term is deemed complete." (*Ibid.*, italics added.)

While employees have an employment relationship with the temporary services employer, they do not have an employment relationship with the client. Section 201.3, subdivision (a)(4), provides, " 'Client' and 'customer' mean the person with whom a temporary services employer has a contractual relationship to provide the services of one or more individuals *employed by the temporary services employer*." (Italics added; see also § 201.3(b)(4) ["If an

---

[5] Section 201, subdivision (a), provides, "If an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately." Section 203, subdivision (a), provides penalties for an employer who willfully fails to timely pay "any wages of an employee who is discharged or who quits . . . ."

*employee of a temporary services employer* is assigned to work for a client . . . ." (italics added)].) Therefore, a "discharge"—the end of an employment relationship—can only occur when an employee is terminated from work with the temporary services employer, not when the employee is terminated from an assignment with a client.

Section 201.3 was enacted in response to *L'Oreal,* but did not amend its definition of discharge. *L'Oreal* involved a company—not a temporary services employer—that hired the plaintiff for a one-day assignment only, but did not pay her for more than two months. (*L'Oreal, supra,* 39 Cal.4th at p. 81.) The Supreme Court held "discharge" for purposes of sections 201 and 203 was not limited to the involuntary termination of an employment relationship, but also occurred when an employer "releases an employee upon the employee's completion of the particular job assignment or time duration for which he or she was hired." (*L'Oreal,* at p. 90.) This reasoning created concern among temporary services employers about "the possibility that Smith v. L'Oreal could be applied to their industry, despite the fact that L'Oreal was and is not a temporary services employer." (Sen. Rules Com., Off. of Sen. Floor Analyses, Rep. on Sen. Bill No. 940 (2007–2008 Reg. Sess.) as amended May 21, 2008, p. 4.) The legislative history explains that the bill enacting section 201.3 "*clarifies* this issue by explicitly stating that an employee of a temporary services employer will be paid weekly, regardless of when the assignment ends, but in the case of an employee of a temporary services employer being discharged, the employee will be paid immediately." (*Id.* at p. 5, italics added.) In other words, the Legislature understood that the *L'Oreal* definition of "discharge" to include the end of a time-limited employment assignment did not apply to the end of a temporary services employee's job assignment because "discharge" only occurs when an

10

employment relationship ends. Nonetheless, to "clarif[y]" the matter, it enacted section 201.3.

This understanding of "discharge" is supported by *Elliot v. Spherion Pacific Work, LLC* (C.D.Cal. 2008) 572 F.Supp.2d 1169, a case involving a temporary services employer. The district court reasoned, "Notwithstanding the legislative clarification [of section 201.3], *L'Oreal*'s general guidance for determining when an employee is 'discharged' under section 201 is still instructive in this case . . . . Here, as a factual matter, Defendant [the temporary services employer] took no action to formally release Plaintiff and end the employment relationship each time one of Plaintiff's temporary assignments ended. Instead, the evidence shows that, at all relevant times, Defendant and Plaintiff maintained a continuous employer-employee relationship even when Plaintiff was not engaged in an assignment." (*Id.* at pp. 1176–1177.)

A "discharge" under section 201.3(b)(4) occurs only when there is an employment relationship, as when a temporary services employee is fired from the temporary services employer. Therefore, it was unnecessary to include the phrase "from a temporary services employer" recited in subdivision (b)(5). We recognize that, as Plaintiff indicates, when an employee quits a temporary assignment, the employee controls the timing, while when an employee is fired from a temporary assignment, the temporary services employer or client controls the timing. In either case, however, if the employer-employee relationship is not terminated, the temporary services employer can immediately reassign the employee to a different client and the employee would therefore continue accruing wages. Indeed, this possibility is expressly contemplated by section 201.3's definition of a temporary services employer as having, among other functions, "the

11

authority to assign or reassign a worker to another client or customer when the worker is determined unacceptable by a specific client or customer." (§ 201.3, subd. (a)(1)(C).)

Finally, Plaintiff relies on the general directive that wage and hour statutes are to be liberally construed in accordance with their worker-protective purposes. (See *Heyen v. Safeway Inc.* (2013) 216 Cal.App.4th 795, 817.) "Because ' "the purpose of" ' the liberal construction rule ' "is to effectuate . . . legislative intent," ' courts ' " 'should not blindly . . . follow[ ] [the rule] so as to eradicate the [legislation's] clear language and purpose.' " ' [Citation.] Thus, we may not apply the rule to ' "enlarge[ ] or restrict[ ]" ' a statute's ' "evident meaning" ' [citation], . . . 'to defeat the overall statutory framework or to disregard the legislative intent' [citation]." (*Skidgel v. California Unemployment Ins. Appeals Bd.* (2021) 12 Cal.5th 1, 24.) In short, we may not " ' "[impermissibly] rewrite the statute[] in the guise of [liberally] construing" ' [it]." (*Ibid.*)

We conclude section 201.3(b)(4) applies when a temporary services employer discharges an employee from employment with the temporary services employer, not when such an employer terminates an employee from a particular work assignment. Because, as noted above, Plaintiff failed to demonstrate a dispute of fact as to whether she was discharged from work with Employer, summary judgment was proper.[6]

## DISPOSITION

The judgment is affirmed.

---

[6] Because we affirm on this ground, we need not decide whether, as the trial court found in the alternative, willfulness is an element of Plaintiff's PAGA claim and Employer established as undisputed fact it did not act willfully.

_____

SIMONS, J.

We concur.

_____

JACKSON, P. J.

_____

BURNS, J.

(A165081)

**<u>Young v. RemX Specialty Staffing et al. (A165081)</u>**

Trial Judge:       Hon. Andrew Y.S. Cheng

Trial Court:       San Francisco County Superior Court

Attorneys:

      Setareh Law Group, Shaun Setareh and Thomas Segal for Plaintiff and Appellant.

      Seyfarth Shaw LLP, Kiran A. Seldon, Timothy L. Hix, Justin T. Curley, and Eden Anderson for Defendants and Respondents.